[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14738
Non-Argument Calendar
_____

D.C. Docket No. 7:16-cr-00016-HL-TQL-1

UNITED STATES OF AMERICA,

                                                Plaintiff - Appellee,

versus

UCHENNA AZUBUIKE,

                                                Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(June 12, 2018)

Before TJOFLAT, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Mr. Azubuike pled guilty to a misdemeanor charge of possessing false identification documents, 18 U.S.C. § 1028(a)(6), which has a base offense level of six under the U.S. Sentencing Guidelines. At Mr. Azubuike's sentencing hearing, the district court also concluded that two sentencing enhancements applied—one two-level enhancement under U.S.S.G. § 2B1.1(b)(2) (a theft offense involving ten or more victims) and another two-level enhancement under § 2B1.1(b)(11) (a theft offense involving the possession or use of an "authentication feature"). The district court therefore sentenced Mr. Azubuike based on a total offense level of ten.

On appeal, Mr. Azubuike argues that the district court should not have applied these two enhancements. We accept the argument with respect to the first and reject the one with respect to the second, and consequently affirm in part and reverse in part. We vacate Mr. Azubuike's sentence and remand for resentencing.

Mr. Azubuike's argument regarding the first enhancement, under § 2B1.1(b)(2) (for an offense with ten or more victims), is that the enhancement did not apply to him because a "victim" in a case like this one is someone "whose means of identification was *used unlawfully or without authority*," U.S.S.G. § 2B1.1(b)(2), app. note 4(E) (emphasis added), and, although he *possessed* the fraudulent passport cards of 13 people, he only *used* one of them unlawfully or without authority, so there was only one victim.

We agree.  Our recent decision in *United States v. Hall*, 704 F.3d 1317 (11th Cir. 2013), is directly on point here.  Interpreting the same terms in an earlier (but in all relevant respects identical) version of the same Guidelines provision, we concluded in *Hall* that applying this enhancement is only appropriate to the extent that the defendant engaged in "the actual use of [a putative victim's] identifying information for a fraudulent purpose."  *Id*. at 1323.  In *Hall*, the defendant *sold* means of identification for between 65 and 141 individuals, and her coconspirators then fraudulently *used* the information of 12 of these individuals (to secure credit cards).  Accordingly, we held that it was error to enhance Ms. Hall's sentence based on the existence of 50 or more victims, and that the enhancement for ten or more victims was "the appropriate one."  *Id*.  Here, likewise, the record reflects that Mr. Azubuike *possessed* the identifying information of 13 individuals, but not that he *used* the identifying information of anyone beyond one person (for the purpose of defrauding workers at a Verizon store into selling him a phone associated with that name).  Indeed, as the government conceded at the sentencing hearing, "There was one card that the government can prove that was actually used. . . .  The other 12 cards we do know were possessed by the defendant.  The government *cannot prove at this juncture that they were actually used in any way, shape or form by Mr. Azubuike*.  . . .  [W]e do not know that they were actually used to purchase anything or to -- or in any other manner."  D.E. 57 at 7–8

3

(emphasis added).  The government also admitted: "We don't have evidence that he actually created the[ cards]."  *Id.* at 8.  Because the government bears the burden of establishing an enhancement which increases a defendant's offense level, *see United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013), and because nothing in the record indicates any kind of "use" for 12 out of the 13 putative victims that the record reflects, we conclude that the district court erred in enhancing based on a finding of "10 or more victims."

Mr. Azubuike's argument with respect to his second enhancement, under § 2B1.1(b)(11) (for an offense involving the possession or use of an "authentication feature," defined at 18 U.S.C. § 1028(d)(1) and incorporated by U.S.S.G. § 2B1.1, app. note 10(A)), is that the enhancement was improper because the only arguable "identification features" on the card that he used—a passport number and an image of Mr. Azubuike's face—are not the kind of things that "distinguish between an authentic and a fabricated card in the way that a hologram, watermark, or seal can."  Appellant's Br. at 18.

We disagree.  Images and strings of numbers may indeed be different from holograms in the way that Mr. Azubuike contends, but this does not put them outside the realm of "authentication features" as defined in 18 U.S.C. § 1028(d)(1).  The relevant definition of "authentication feature" includes among the available alternatives *not only* production techniques that are used "*individually . . .* to

4

determine if the document is counterfeit," such as "hologram[s]" and "watermark[s]," *but also* easier-to-counterfeit features that "*in combination with another feature*" are used "to determine if the document is counterfeit," including "sequence[s] of numbers or letters" and "image[s]."   18 U.S.C. § 1028(d)(1) (emphases added).  So, even granting that the latter features do not, "in a vacuum, . . . distinguish between an authenticated and a fabricated card," as Mr. Azubuike argues, this does not render them any less "authentication features."

In sum, the district court correctly applied the § 2B1.1(b)(11) enhancement, but erred in applying the § 2B1.1(b)(2) enhancement.  Correcting for the error, Mr. Azubuike's total offense level should have been eight, not ten, and his sentence range under the guidelines should have been lower.

"When a defendant is sentenced under an incorrect Guidelines range . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).  *See also United States v. Frazier*, 605 F.3d 1271, 1283 (11th Cir. 2010).  Here, the government does not argue that the sentence—at the upper limit of the guidelines range that the district court calculated—was proper notwithstanding any errors that this Court might identify.  Consequently, we affirm with respect to the § 2B1.1(b)(11) enhancement, reverse with respect to the § 2B1.1(b)(2) enhancement, vacate the sentence, and remand for resentencing.

5

**AFFIRMED IN PART AND REVERSED IN PART; VACATED AND REMANDED FOR RESENTENCING.**